UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 1:16-cr-00074-NONE |
|---|---|
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| DAVID KHACHO, | |
| Defendant. | (Doc. No. 77) |

Pending before the court is defendant David Khacho's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") pandemic. (Doc. No. 77.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On March 26, 2018, defendant entered pleas of guilty, without a plea agreement, to the indictment in this case in which he was charged in three separate counts with distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (Doc. Nos. 9 at 1–2; 50.) The presentence report prepared in defendant's case explained that the charges stemmed from defendant's sale of over 1,800 grams of methamphetamine to an undercover agent. (Doc. No. 56 (Presentence Report) at 4–5.) After his guilty pleas were entered, it was determined that under

1

the U.S. Sentencing Guidelines defendant Khacho's adjusted offense level was 35 and his criminal history placed him in category IV, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 235 and 293 months. (*Id.* at 17.) Based on defendant's post-arrest rehabilitation, the U.S. Probation Office recommended a sentence of 180 months on each of the three counts with those sentences to run concurrently. (*Id.*) On August 13, 2018, the court adopted that recommendation and sentenced defendant to the custody of the U.S. Bureau of Prisons ("BOP") for an aggregate term of 180 months (180 months on each count to run concurrently with one another), followed by a total term of supervised release of 36 months (36 months on each count to run concurrently), and the mandatory $300 penalty assessment. (Doc. Nos. 62; 63 at 2–3.)

Defendant is currently serving his sentence of imprisonment at the BOP's Lompoc Penitentiary in Lompoc, California ("USP Lompoc"). (Doc. No. 77 at 1.) On October 2, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 77.) On October 23, 2020, the government filed its opposition to the motion, and on October 30, 2020, defendant filed his reply thereto. (Doc. Nos. 81, 86.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

/////

/////

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of*

3

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 978–79 (C.D. Cal. 2020) (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United*

---

*Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360. com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

*States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.    Administrative Exhaustion**

On April 24, 2020, defendant Khacho submitted an administrative request to the Warden at USP Lompoc seeking compassionate release. (Doc. No. 77-1 at 2–4.) On May 13, 2020, the Warden denied defendant's request. (Doc. No. 77-2 at 2.) Thereafter, it appears that defendant renewed his request—although no copy of the renewed request has been provided to the court—and that renewed request was again denied on August 18, 2020. (*Id.* at 3.) The government agrees that administrative exhaustion is satisfied here because more than 30 days have passed since defendant submitted his administrative request. (Doc. No. 81 at 3.) The court believes that the government's position on this point may not be well–taken. *See* note 1, above. Nonetheless, because a failure to exhaust administrative remedies is normally viewed as an affirmative defense, the government's concession on this point will be accepted. In any event, the court need

not resolve the issue of whether defendant has properly exhausted his administrative remedies in this case because, as discussed below, the pending motion for compassionate release fails to establish extraordinary and compelling reasons warranting defendant Khacho's release or that the requested reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).

**B.      Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4] In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Khacho argues that extraordinary and compelling reasons warranting his compassionate release exist due to medical conditions. To qualify for compassionate release, defendant must demonstrate that he is suffering from some serious medical condition "that substantially diminishes [his] ability . . . to provide self-care" in USP Lompoc and "from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Specifically, defendant argues that his chronic asthma condition and his long history of smoking tobacco place him at higher risk for becoming severely ill were he to contract COVID-19. (Doc. No. 77 at 11.) At the time his presentencing report was prepared, the only medical conditions that defendant was reported to suffer from was a torn anterior cruciate ligament (ACL) and some joint and back pain.

---

[4] Because defendant Khacho is only 30 years old, (*see* Doc. No. 56 (Presentence Report) at 2), these age and age-related factors are irrelevant to the court's disposition of the pending motion.

7

(Doc. No. 56 (Presentence Report) at 11.)  Defendant did not report taking any medication in connection with any medical conditions at that time.  (*Id.*)  Since his imprisonment, however, the BOP has prescribed defendant an albuterol inhaler.  (Doc. No. 80 at 3 (sealed).)  As of September 3, 2020, the BOP instructed defendant to use his inhaler four times a day, seven days a week—although there appears to be contradictory information in that regard within defendant's BOP medical records.  (*Compare id.*, *with id.* at 18 (explaining defendant should not use his inhaler daily and but rather "as needed to prevent/relieve asthma attack").)  Further, on September 3, 2020, defendant was diagnosed with "[o]ther specified symptoms and signs involving the circulatory and respiratory systems," after he complained of shortness of breath throughout the day and a sharp pain.  (*Id.* at 17, 19.)

Based on this record, the court will err on the side of caution and conclude that defendant suffers from at least moderate asthma because the BOP's medical records unequivocally state that defendant should use his inhaler every day and it is documented that he is currently experiencing issues with his respiratory system.  *Adult-Onset Asthma*, WEBMD, https://www.webmd.com/asthma/guide/adult-onset-asthma (last visited Nov. 25, 2020) (noting that adults who suffer from moderate persistent asthma display symptoms daily with reduced lung function).  The court disagrees with the government's assessment that because the BOP has not yet officially diagnosed defendant as suffering with asthma and because his BOP medical records were void of any reference to asthma until September of this year, defendant does not suffer from even a mild asthma condition.  (*See* Doc. No. 81 at 8–9.)  In advancing this argument, the government fails to address the BOP medical evidence indicating otherwise and does not acknowledge the realities of why medical staff at USP Lompoc in particular may have been slow to diagnose inmates with certain medical conditions, given the COVID-19 outbreak suffered at that prison over the past several months.  (*See id.* at 4 (explaining the steps BOP medical staff are taking on a daily basis to prevent the spread of COVID-19).)  In addition to defendant's asthma condition, the court acknowledges that defendant Khacho has been a smoker of some kind for the last decade, including smoking marijuana, cigarettes, hookah, and most recently electronic cigarettes (or vaping).  (*See generally* Doc. No. 77-5.)

According to the U.S. Centers for Disease Control and Prevention ("CDC"), defendant Khacho is in fact at higher risk of suffering a severe illness were he to contract COVID-19 because he was a former cigarette smoker. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Nov. 25, 2020) ("Being a current or former cigarette smoker increases your risk of severe illness from COVID-19."). Additionally, defendant "might be at an increased risk for severe illness" from COVID-19 because he suffers from moderate asthma. *Id.* Although defendant's history of smoking places him at greater risk of suffering a severe illness from COVID-19, other courts have found that there are policy reasons why smoking by itself—especially with no supporting evidence that the history of smoking has caused significant health ailments—may not be an appropriate ground justifying compassionate release. *See, e.g.*, *United States v. Green*, No. 17-20822, 2020 WL 6144556, at *5 (E.D. Mich. Oct. 20, 2020) ("And while smoking or prior smoking may indicate an increased risk of complications, especially if it caused another respiratory ailment, there are obvious policy reasons why courts may hesitate to find that being a former, or current, smoker supports finding extraordinary and compelling reasons for release."). Nonetheless, defendant Khacho suffers from one comorbidity: moderate asthma.

Based on the BOP medical records submitted in connection with the pending motion, it appears that defendant Khacho may have already contracted COVID-19 on April 1, 2020 when the BOP classified him as asymptomatic and placed him in quarantine.[5] (Doc. No. 80 at 16 (sealed).) At the very least, it appears clear that defendant was exposed to COVID-19 at that

---

[5] Defendant Khacho's BOP medical records do not explicitly state that he tested positive for COVID-19, only that he was "asymptomatic." (Doc. No. 80 at 16 (sealed).) Generally speaking, an asymptomatic individual: (1) has recovered from an illness but no longer displays symptoms; or (2) has an illness but is not displaying symptoms. *Asymptomatic*, U.S. NATIONAL LIBRARY OF MEDICINE: MEDLINE PLUS, https://medlineplus.gov/ency/article/002217.htm (last visited Nov. 25, 2020). Therefore, asymptomatic people are those who have contracted an illness. Assuming the BOP used the term in keeping with its recognized meaning, it appears that defendant Khacho contracted COVID-19 around April 1, 2020. However, even if defendant has not tested positive for COVID-19, the court would still conclude that extraordinary and compelling reasons do not justify his compassionate release.

9

time. (*Id.*) On May 21, 2020, the BOP noted that defendant's COVID-19 diagnosis (or exposure) was resolved. (*Id.*) If defendant did in fact contract COVID-19, then the court must construe defendant's motion as one seeking release based on the risk of reinfection posed to him. In this regard, many courts have "err[ed] on the side of caution to avoid potentially lethal consequences" because "the science is unclear on whether reinfection is possible." *United States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020) (finding extraordinary and compelling reasons exist where a COVID-positive inmate at FCI Terminal Island, who did not develop severe symptoms, suffered from a combination of medical conditions that placed him at risk of serious complications from COVID); *see also United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged. . . . [T]he Court remains concerned about FCI Terminal Island's ability to provide adequate care in light of defendant's complex medical needs. The Court is not convinced that FCI Terminal Island has been successfully mitigating the risk of reinfection, given the high numbers of infected inmates and Defendant's own contraction of the virus."). Other courts have taken the position that uncertainty surrounding the danger of reinfection "cuts against compassionate release," in part because it is the defendant's burden to establish that "extraordinary and compelling reasons" justifying compassionate release exist. *See United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020).

Nonetheless, whether defendant Khacho has already contracted COVID-19 makes no difference to the resolution of the pending motion. Even assuming he has not contracted COVID-19, defendant's moderate asthma condition, defendant's history of smoking, and the risks posed to him by COVID-19 are insufficient grounds upon which to justify his compassionate release. Certainly other courts have denied compassionate release in cases involving more serious medical conditions and circumstances than those presented by defendant Khacho. *See, e.g.*, *United States v. Anguiera*, No. 11-CR-116 (WMS), 2020 WL 3424530, at *4–7 (W.D.N.Y. June 23, 2020) (denying compassionate release for a 37-year-old inmate alleging that his obesity, asthma, and

history as a smoker warranted release, even though he was incarcerated at a COVID-19 "hotspot"); *United States v. Lee*, No. 10-20128-01-KHV, 2020 WL 5993505, at *6 (D. Kan. Oct. 9, 2020) (denying compassionate release in the case of a 41-year-old inmate alleging that his asthma, history of smoking, and intellectual disability warranted release in light of the risk of infection); *United States v. Cheek*, No. 2:18-CR-91-PPS, 2020 WL 3496885, at *2–3 (N.D. Ind. June 29, 2020) (denying compassionate release in the case of a 43-year-old inmate with asthma and a 20-year history of smoking despite the risk posed by possible COVID-19 infection). If defendant Khacho did contract COVID-19 in April and recovered without displaying any serious symptoms, it would seem, absent some evidence to the contrary, that the risk of him becoming severely ill from reinfection at this point would be speculative at best. Thus, under either scenario—whether he seeks release based on the risk of contracting COVID-19 for the first time or relief based on the possibility of his reinfection—the court concludes that defendant Khacho's medical conditions are not "serious" for purposes of compassionate release. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

Further, defendant Khacho has failed to show that his medical conditions "substantially diminish[] [his] ability . . . to provide self-care" in USP Lompoc. *See id.* It is true that USP Lompoc suffered from a significant COVID-19 outbreak, with 142 inmates and 28 staff being reported as having tested positive for the virus but as having recovered, while two inmates died at the hands of the virus. *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Nov. 25, 2020).[6] At the moment, however, there are currently zero inmates and only one staff member who are reported as having active positive cases of COVID-19.[7] *Id.* Because it appears that the number of current active cases among prisoners at USP Lompoc has been reduced to zero, adding COVID-19 to the equation does not

---

[6] USP Lompoc has a population of 1,228 inmates. *USP Lompoc*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/lom/ (last visited Nov. 25, 2020).

[7] While the undersigned does not necessarily accept these reported numbers at face value in light of current CDC guidelines with respect to both testing and the manner of counting "active cases" which apparently allows infected individuals to be reported as "recovered" with no confirming re-testing, there is also no evidence before the court challenging those reported numbers in this case.

tip the scales in favor of defendant's compassionate release.  Aside from citing the general risk of contracting COVID-19, which appears to be minimal at the prison where he is confined at this time, defendant has not pointed to any evidence demonstrating that he is "substantially diminishe[d]" in providing "self-care."  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  Nothing currently in the record before this court shows that defendant is actually struggling to take care of himself while in prison.  The court observes that as of July 20, 2020, a BOP medical staff member noted that defendant appeared "[w]ell, [a]lert and [o]rientated[.]"  (Doc. No. 80 at 5 (sealed); *id.* at 2 (noting as of September 3, 2020, defendant appeared "[a]lert and [o]rientated").)  Further, BOP's medical staff appears to be providing defendant with proper medical care on a regular basis.  (*See id.* at 15 (listing defendant's various appointments with BOP's medical staff in June 2020, July 2020, and September 2020); *id.* at 18 (instructing defendant to return his empty albuterol inhaler for a refill).)  While defendant has cited to cases where courts have granted compassionate release based on an inmate's asthma condition alone, those cases are readily distinguishable from this one because the inmates in those cases came forward with evidence that they had significant difficulties in providing self-care at their respective facilities.  *See, e.g.*, *United States v. Gorai*, No. 2:18-CR-220 JCM, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) (explaining that BOP's medical staff "recommended that defendant use his inhaler more than prescribed" and that he had "not received breathing treatments to clear his lungs, despite repeated requests"); *United States v. Wen*, 454 F. Supp. 3d 187, 196–97 (W.D.N.Y. 2020) ("the record before the Court suggests that the facility is *recklessly* failing to take even the basic steps necessary to protect against the spread of the disease") (emphasis added)).[8]  While there is some risk posed to defendant Khacho due to the possibility of contracting COVID-19 (or becoming

---

[8] Defendant cites a case granting compassionate release to an inmate suffering from asthma in which the court only analyzed the inmate's ability to provide self-care briefly.  *See United States v. Hernandez,* 451 F. Supp. 3d 301, 304 (S.D.N.Y. 2020) ("the crowded nature of municipal jails such as the facility in which Mr. Hernandez is housed present an outsize risk that the COVID-19 contagion, once it gains entry, will spread").  However, there, the inmate had already served 17 months of his 24-month sentence and was set to be released from prison four months after the date of the court's order, and thus his release was consistent with the sentencing factors as required by the compassionate release statute.  *Id.* at 301.  In contrast, here, and as the court notes in the following section of this order, defendant Khacho has served less than ¼ of his sentence.

reinfected), that risk does not provide the court with a sufficient basis to conclude that he is "substantially diminishe[d]" in his ability to "provide self-care" at USP Lompoc—a facility that, at this point, appears to have brought the number of COVID-19 cases among inmates to zero. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Thus, defendant Khacho has failed to carry his burden in this regard. *See Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction.").

Therefore, in this case, the court does not find extraordinary and compelling reasons justifying compassionate release pursuant to § 3582(c)(1)(A).

**C.     Consistency With the § 3553(a) Factors**

Finally, any relief to be granted pursuant to 18 U.S.C. § 3582(c)(1)(A) must be consistent with the sentencing factors set forth in §3553(a).[9] *Trent*, 2020 WL 1812242, at *2; *see also Parker*, 461 F. Supp. 3d at 981. Here, consideration of the § 3553(a) sentencing factors also fail to support defendant Khacho's release.

Defendant is serving his current term of imprisonment for selling over 1,800 grams of methamphetamine to an undercover agent. (Doc. No. 56 (Presentence Report) at 4–5.) The presentence report details that defendant told the undercover agent that he had access "[a]ll day" to significant quantities of methamphetamine. (*Id.* at 4.) On one occasion, defendant met with the undercover agent in a public parking lot intending to sell one pound of methamphetamine to him, but at the undercover agent's request, defendant retrieved another pound of methamphetamine from an undisclosed location and returned to the parking lot shortly thereafter.

---

[9] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

(*Id.*)  Additionally, defendant Khacho told the undercover agent that he also had access to heroin and cocaine, but he observed there were extra obstacles standing in his way to sell those controlled substances, such as the high price of cocaine.  (*Id.* at 5.)  Defendant told the undercover agent that he had many connections: "I have been dealing with that for years.  I built my name." (*Id.*)  In sum, defendant appears to have been a sophisticated drug dealer for some period of time prior to his arrest in this case.

The court does acknowledge that defendant Khacho performed very well on pretrial release in this case for an extended period of time, including completing a 90-day residential substance abuse treatment program, graduating from the court's Better Choices Court Program, maintaining full-time employment, and successfully complying with random drug and alcohol testing.  (*Id.* at 4.)  Defendant's post-arrest rehabilitation is both notable and commendable. Indeed, the U.S. Probation Office also recognized defendant's post-arrest rehabilitation when it recommended a sentence of 180 months, or 55 months below the low end of the advisory sentencing guideline range for his offenses of conviction.  (*Id.* at 18.)  Although defendant's post-arrest rehabilitation was commendable, the sentencing judge noted that "[t]his [wa]s a very difficult case" in terms of determining the appropriate sentence.  (Doc. No. 69 (Sentencing Transcript) at 31.)  The sentencing judge expressed serious concerns regarding a picture defendant sent to his then-girlfriend, which was subsequently uploaded to Facebook, identifying the confidential informant involved in the defendant's sale of methamphetamine in this case.  (*Id.* at 11 (stating that outing an informant is "one of the most serious things someone could do").) The court allowed defendant Khacho to explain the circumstances of sharing that photo, and also permitted the government to argue why a low-end guideline sentence with no downward variance was appropriate in this case.  (*Id.* at 3–6, 11, 30.)  Ultimately, the sentencing judge was persuaded by defendant's post-arrest rehabilitation (most of which came after defendant had shared the photo) and sentenced him to a well below-guideline term of imprisonment of 180 months.  (*Id.* at 31–32.)  Defendant has now served only approximately 27 months of that 180-month sentence, or about 17% of his sentence accounting for good time credits.  (*See* Doc. No. 81-1 at 4.)

/////

Based on the record in this case, any further downward variance/reduction of defendant's sentence is not justified. Despite defendant's post-arrest rehabilitation, the fact remains that this case involved the sale of a large quantity of methamphetamine. (Doc. No. 56 (Presentence Report) at 6.) In the undersigned's view, a 27-month sentence (and a 153-month reduction of the sentence imposed) would not reflect the seriousness of defendant's offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See* § 3553(a); *see also United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release analysis, with a longer remaining sentence weighing against granting any such motion." (citation omitted)). Thus, the court concludes that granting defendant Khacho's compassionate release would be inconsistent with consideration of the § 3553(a) sentencing factors and his motion will be denied on this basis as well.

## CONCLUSION

For the reasons explained above, the court concludes that defendant has not demonstrated that "extraordinary and compelling reasons" exist warranting his compassionate release from prison. Moreover, the court finds that the granting of release at this time is not consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). Accordingly, defendant's motion for compassionate release (Doc. No. 77) is denied.

IT IS SO ORDERED.

Dated: **November 27, 2020**

UNITED STATES DISTRICT JUDGE